# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Richard Ralph and Eugenia Ralph, Respondents,

v.

Paul Dennis McLaughlin and Susan Rode McLaughlin, Petitioners.

Appellate Case No. 2019-002031

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
Roger M. Young Sr., Circuit Court Judge

---

Opinion No. 28015
Heard December 9, 2020 – Filed March 17, 2021

---

## REVERSED

---

G. Hamlin O'Kelley III, of Buist Byars & Taylor, LLC,
of Mt. Pleasant, for Petitioners.

Ainsley F. Tillman and Ian S. Ford, both of Ford Wallace
Thomson LLC, of Charleston; and G. Dana Sinkler, of
Gibbs & Holmes, of Wadmalaw Island, for Respondents.

---

**PER CURIAM:** This action involves a dispute stemming from the removal of a
drainage pipe running across neighboring properties. The pipe was part of an

easement that was originally owned by the Seabrook Island Property Owners Association (SIPOA) and was intended to carry away stormwater from a road in the community, with the pipe running through the backyard portions of seven contiguous lots. Over the years, the drainage pipe degraded and became porous such that, aside from carrying away stormwater from the road, it also began draining standing water from the backyards of those seven lots. Nearly twenty years later, SIPOA installed a new drainage system for the road, rendering the old one obsolete. At a property owner's request, SIPOA formally abandoned the easement, although the porous pipe remained in place. Petitioners Paul and Susan McLaughlin later purchased one of the seven lots containing the old drainage pipe (Lot 22). After six years of meetings and consultation with SIPOA and their neighbors, and after receiving home design and location approval from SIPOA, Petitioners removed the pipe and built their new house over the area in which the pipe was previously located. Respondents Richard and Eugenia Ralph own the parcel next door to Petitioners (Lot 23). Following removal of the pipe, Respondents claimed their backyard flooding became worse than it already was and sued Petitioners. A jury awarded Respondents $1,000 in "nominal" damages, but, despite winning below, Respondents appealed. The court of appeals reversed and remanded for a new trial on damages alone. *Ralph v. McLaughlin*, 428 S.C. 320, 834 S.E.2d 213 (Ct. App. 2019). We reverse the court of appeals and reinstate the jury's $1,000 verdict, thereby ending this case.

## I.

In the mid-1980s, when Lots 22 and 23 were initially created, the developer installed a corrugated-metal pipe to facilitate drainage from a road in the community. The developer installed the pipe through the backyard-portions of Lots 22 to 28, after which the pipe emptied into a water hazard on a neighboring golf course. When the developer recorded the plats for Lots 22 to 28, it noted the pipe as a twenty-foot wide drainage easement running under the lots. The recorded plat indicated the area between the drainage pipe and the golf course was a "no-build area."

As the years passed, the joints in the drainage pipe rotted and, although they were not originally designed to do so, began to allow standing water from the backyards of Lots 22 to 28 to seep into the pipe and be carried away with the stormwater from the road. In terms of the drainage easement, Lot 22 (Petitioners' lot) is upstream of Lot 23 (Respondents' lot).

In 2002, a parallel drainage system of high-density plastic piping was installed on the neighboring golf course, which rendered obsolete the existing corrugated-metal pipe running through Lots 22 to 28. Therefore, the SIPOA Board of Directors passed a resolution "to give the easement back to the property owner[s of Lots 22 to 28] with the understanding that the property owner[s] pay all cost[s] necessary to remove the easement." The then-owner of Lot 22—Petitioners' predecessor in title—promptly recorded a plat (the Forsberg plat) showing the easement as abandoned, in line with the action taken by the SIPOA Board of Directors. The Forsberg plat states, "By the approval and recording of this plat[,] the existing 'No Build Area' is hereby removed as a limitation to location of any structure on Lot 22." Only one or two of the other six affected property owners of Lots 23 to 28 formally removed the easement from their property by recording SIPOA's abandonment of the easement.

Petitioners subsequently purchased Lot 22 with the understanding that SIPOA had abandoned the easement and that they (Petitioners) merely had to "take care of the removal of the pipe."[1] For the next three years, believing the drainage easement was abandoned, Petitioners made plans to build their new home over the area in which the drainage pipe sat (i.e., the former no-build area). Eventually, Petitioners received approval from SIPOA to build their home in that location, subject to certain conditions, the most relevant of which was that Petitioners were "to assume all responsibility for the abandoned drainage easement that may contain a pipe."[2]

---

[1] According to Mr. McLaughlin's trial testimony, Petitioners' purchase offer was contingent upon the easement being removed.

[2] The parties dispute what "all responsibility for the abandoned drainage easement" was intended to mean. Petitioners claim SIPOA told them the phrase meant financial responsibility for the construction costs of removing the pipe only, whereas Respondents claim the phrase meant financial responsibility to the downstream lot owners who would be affected if Petitioners removed the drainage pipe. Given that SIPOA actually approved of Petitioners' proposed home location, we agree with Petitioners' reading of the contested phrase. It would be nonsensical for SIPOA to approve of a home in a prohibited location while simultaneously warning Petitioners they would be liable to neighboring homeowners for any future problems. If that was what SIPOA intended by saying Petitioners "assume[d] all responsibility for the abandoned drainage easement," then SIPOA would have simply denied Petitioners application to build their home in that location.

Respondents discovered Petitioners planned to remove the drainage pipe and voiced concerns about the potential adverse impact it could have on their lot's already-poor ability to drain itself. In response, SIPOA commissioned an engineering study of the pipe and the immediately surrounding area. The study ultimately recommended against destroying the drainage pipe because the pipe still functioned somewhat and benefitted the owners of Lots 22 to 28 by draining standing water from their backyards to some degree.

Subsequently, SIPOA invited the owners of Lots 22 to 28 to a meeting "to discuss the possibility of *re-establishing* the easement and providing for the long-term care of the pipe," acknowledging that "doing so w[ould] require the cooperation of all property owners." (Emphasis added). Ultimately, Petitioners, Respondents, and the other lot owners tentatively "agreed to grant [SIPOA] a *new* easement to connect out th[e corrugated-metal] pipe" to the drainage system in the neighboring golf course. (Emphasis added). However, connecting the abandoned pipe to the golf course's drainage system would have required the golf course to grant SIPOA an easement across the golf course's property.

Following that meeting, SIPOA informed Petitioners they bore the burden of negotiating for the new easement with the golf course. Believing any negotiations should be SIPOA's responsibility, Petitioners refused to take responsibility for negotiating a new easement with the golf course and declined to grant SIPOA a new easement. Moreover, the golf course was not willing to grant an easement or otherwise work with SIPOA or the parties to resolve the dispute over the abandoned easement. Thus, six years after Petitioners purchased Lot 22 with the abandoned easement, they decided to move forward with the building of their home.

Petitioners notified the other property owners of Lots 23 to 28 of their decision, explaining that they had attempted to be patient during the multi-year process, but they had already delayed construction of their home for six years waiting for the dispute to play out, and they did not want to put off building their home any longer. Petitioners then authorized their contractor to remove the drainage pipe and constructed their house over the former no-build area formerly containing the pipe.

After the pipe was removed, Respondents claimed there was an increase in the amount of water on their property, which they attributed to Petitioners. Believing their property's value had been greatly diminished, Respondents filed suit against Petitioners, asserting claims for trespass and intentional infliction of emotional

distress and seeking hundreds of thousands dollars in actual and punitive damages. In turn, Petitioners filed a third-party complaint against SIPOA for indemnification in the event Respondents were successful, asserting Petitioner's actions were taken in reasonable reliance upon SIPOA's abandonment of the easement and representations that Petitioners could remove the pipe.

SIPOA then moved for, and was granted, summary judgment. In the summary judgment order, the presiding circuit court judge (who was not the trial judge) acknowledged Petitioners had produced evidence that would tend to show they reasonably relied on SIPOA's representations before removing the drainage pipe, which would seem to defeat SIPOA's summary judgment motion. Rather than considering the existence of evidence in support of Petitioners' claims, the circuit court judge discounted Petitioners' evidence, characterizing the evidence as hearsay and rejecting it. Petitioners did not appeal the summary judgment order at that time. Given the standard for granting summary judgment, the circuit court judge's decision is troubling.

The case proceeded to trial. At the close of Respondents' (plaintiffs) case-in-chief, Petitioners successfully moved for a directed verdict on the punitive damages issue. The trial court found Respondents failed to prove by clear and convincing evidence that Petitioners acted with a reckless disregard of Respondents' rights. Specifically, the trial court held Petitioners acted in reliance of SIPOA's statements that the easement was abandoned and they were permitted to build their house in the former no-build area.[3] As a result, the trial court found that Petitioners' actions did not "rise[] to the level of punitive damages."

Later, at the close of Petitioners' (defendants) case-in-chief, Respondents made a motion for a directed verdict on their trespass claim. In relevant part, Respondents argued SIPOA's purported abandonment of the easement did not affect Respondents' ownership interest in the easement. Therefore, according to Respondents, Petitioners' actions in removing the drainage pipe and building a

---

[3] The prior grant of summary judgment for SIPOA may have foreclosed Petitioners' ability to seek indemnification from SIPOA, but it did not foreclose the trial court from allowing in relevant evidence at trial. The representations and conduct of SIPOA were highly relevant to the issues raised by Respondents, including the issue of punitive damages.

house in the former no-build area constituted trespass as a matter of law. The trial court denied Respondents' motion for a directed verdict, finding the issue presented a jury question.

Ultimately, the jury found in favor of Respondents but only awarded them $1,000 in "nominal" damages.[4] Respondents made motions for a new trial absolute, a new trial as to damages only, or a new trial *nisi additur* pursuant to Rule 59, SCRCP. The trial court denied Respondents' post-trial motions. In relevant part, the trial court found there was evidence to support the factual findings implicit in the jury's verdict, including the fact that, while Petitioners may have "committed trespass by removing the drainage pipe," "the jury did not find that [Petitioners'] trespass caused the damage alleged by [Respondents] but understood the law requires at least nominal damages to vindicate [Respondents'] rights." As an example of that supporting evidence, the trial court cited to Mrs. Ralph's testimony that her property "always had some type of surface water problem" even before the drainage pipe was removed. Therefore, the trial court held it would be inappropriate to grant a new trial absolute, a new trial on damages only, or a new trial *nisi additur*.

Respondents then appealed to the court of appeals. The court of appeals reversed and remanded for a new trial as to compensatory and punitive damages alone. In relevant part, the court of appeals found the trial court erred in failing to grant Respondents' motion for a directed verdict as to the trespass issue, explaining Respondents had established Petitioners' liability as a matter of law. The court of appeals also held the trial court improperly entered a verdict for Petitioners on the punitive damages issue because it failed to follow the "determinations of law" in the summary judgment order that Petitioners did not justifiably rely on SIPOA's

---

[4] Generally speaking, nominal damages amount to substantially less than $1,000. *See, e.g.*, *Hinson v. A.T. Sistare Constr. Co.*, 236 S.C. 125, 133–34, 113 S.E.2d 341, 345 (1960) ("[N]ominal damages have been defined as a trifling sum awarded to a plaintiff when there is no substantial loss or injury to be compensated, but still the law recognizes a technical invasion of his rights or a breach of the defendant's duty, or in cases where, although there has been a real injury, the plaintiff's evidence entirely fails to show an amount . . . . A verdict for $200 is a verdict for substantial, not nominal, damages."). Here, the jury handwrote in the word "nominal," so that instead of saying $1,000 in "actual damages," the verdict form read $1,000 in "actual nominal damages."

representations in removing the pipe. Because the court of appeals found Respondents had established Petitioners' trespass—and their resulting liability—as a matter of law, the court of appeals held the trial court erred in failing to grant Respondents' post-trial motions, finding a new trial as to compensatory and punitive damages alone would be the appropriate remedy.

We granted Petitioners a writ of certiorari to review the decision of the court of appeals.

## II.

We first address the court of appeals' finding that Respondents were entitled to a directed verdict on the trespass issue because they established an ownership interest in the drainage easement as a matter of law. Because the jury ruled in Respondents' favor on the matter of liability by finding Petitioners had committed a compensable trespass, Respondents were not aggrieved by the denial of their motion for a directed verdict as to liability and, as a result, had no right to appeal that decision.

"The right of appeal arises from and is controlled by statutory law." *Ex parte Capital U-Drive-It, Inc.*, 369 S.C. 1, 6, 630 S.E.2d 464, 467 (2006). As set forth in section 18-1-30 of the South Carolina Code (2014), only a "party aggrieved" may appeal. *See also* Rule 201(b), SCACR ("Only a party aggrieved by an order, judgment, sentence or decision may appeal."). As we explained long ago,

> [A]n aggrieved party is one who is injured in a legal sense; one who has suffered an injury to person or property. . . . [A]n aggrieved party with[in the meaning of the] statute relating to appeals is a person who is aggrieved by the judgment or decree when it operates on his rights of property or bears directly upon his interest, the word aggrieved referring to a substantial grievance, a denial of some personal or property right or the imposition on a party of a burden or obligation.

*Cisson v. McWhorter*, 255 S.C. 174, 178, 177 S.E.2d 603, 605 (1970) (quoting *Bivens v. Knight*, 254 S.C. 10, 13, 173 S.E.2d 150, 152 (1970)). Here, the jury found in Respondents' favor on the matter of liability. Therefore, Respondents were not "aggrieved," in the legal sense, by the trial court's denial of their motion

for a directed verdict. We therefore hold the court of appeals improperly reversed the jury verdict on this basis.[5]

## III.

We also find the court of appeals erred in holding the trial court erred in failing to grant Respondents' motions for a new trial. "Upon review, a trial judge's order granting or denying a new trial will be upheld unless the order is wholly unsupported by the evidence, or the conclusion reached was controlled by an error

---

[5] Because we reverse the court of appeals' decision based on Respondents' lack of "aggrieved party" status, we need not address the merits of their claim that they had some sort of ownership right in the drainage easement. Nonetheless, we express concern over the court of appeals' discussion of the matter, and particularly, its alteration of a quote from the *Williamson* case. *Compare Ralph*, 428 S.C. at 352, 834 S.E.2d at 230 (stating, with the alterations inserted by the court of appeals, "It is generally held that when the owner of land has it subdivided and platted into lots and [easements,] and sells and conveys the lots with reference to the plat, he hereby dedicates said [easements] to the use of such lot owners [and] their successors in title. . . ." (quoting *Blue Ridge Realty Co. v. Williamson*, 247 S.C. 112, 118, 145 S.E.2d 922, 924–25 (1965))), *with Williamson*, 247 S.C. at 118, 145 S.E.2d at 924–25 ("It is generally held that when the owner of land has it subdivided and platted into lots *and streets* and sells and conveys the lots with reference to the plat, he thereby dedicates said *streets* to the use of such lot owners, their successors in title, *and the public*." (emphasis added)). The two scenarios presented here and in *Williamson* (and other cases relied on by the court of appeals) are fundamentally different. *Williamson* involved the claim of a property owner to use a public street shown on a recorded plat. In contrast, here, we have a person whose property contains an easement *intended for the benefit of another*, but who nonetheless claims an ownership interest over the easement because it inadvertently benefits him as well—regardless of the original intent behind the easement. In *Williamson*, the property owner (and their successors in title) were *intended* to benefit from access to the public road. Here, the exact opposite is true, and the owners of Lots 22 to 28 were never intended to benefit directly from the easement. The fact that they did so was a pure accident, caused by the unexpected degradation of the corrugated-metal pipe. In short, *Williamson* does not stand for the proposition for which it was cited by the court of appeals, but, because it is not required, we express no further opinion on the merits of Respondents' argument.

of law." *Norton v. Norfolk S. Ry. Co.*, 350 S.C. 473, 478, 567 S.E.2d 851, 854 (2002) (citation omitted) (internal quotation marks omitted). We find no evidence the trial court abused its discretion in denying Respondents' motions for a new trial. Respondents themselves testified that their lot always had drainage problems, even before the removal of the drainage pipe. The issue of damages was fully vetted, with no limitations placed on Respondents' presentation of damages evidence, and the jury determined Respondents were entitled to $1,000 in damages. Under the circumstances, we find no basis to set aside the trial court's denial of Respondents' new trial motion.

## IV.

Finally, as to the punitive damages issue, given the specific facts of this case, we find as a matter of law that Respondents were not entitled to punitive damages. It is undisputed that over the course of six years, Petitioners took a series of good-faith steps in dealing with SIPOA and their neighbors in an attempt to resolve the drainage pipe dispute. In essence, Petitioners did everything they could to accommodate SIPOA and their neighbors besides filing a declaratory judgment action to confirm what was already shown on their deed—that SIPOA had abandoned the drainage easement in 2002. SIPOA indicated multiple times that it had abandoned the drainage easement, and all of the recent discussions were about "re-establishing" the easement or creating a "new" easement—things which Petitioners had no legal obligation to do. We recognize Respondents believe that Petitioners could have done more to accommodate them and, therefore, contend Petitioners acted in a malicious manner entitling Respondents to punitive damages. However, we have carefully reviewed the record in a light most favorable to Respondents, and we find no evidence creating a question of fact on the issue of punitive damages. *See Cartee v. Lesley*, 290 S.C. 333, 337–38, 350 S.E.2d 388, 390 (1986) (explaining that when the evidence is susceptible of only one reasonable inference, the question of punitive damages becomes one for the court). The suggestion that removing the drainage pipe under these circumstances established clear and convincing evidence of Petitioners' malicious intent to invade Respondents' rights was not merely speculation, but absurd. We therefore reverse the court of appeals on this issue.

## V.

In sum, we find the trial court did not err in any respect and, thus, reinstate the jury's $1,000 verdict in favor of Respondents. The decision of the court of appeals is therefore reversed. Our decision to reinstate the jury's verdict ends this case.

**REVERSED.**

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., and Acting Justice Thomas E. Huff, concur.**